## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## CHARLESTON DIVISION

| | | |
|---|---|---|
| SHELLY G. HUDSON, | ) | |
| | ) | |
| Plaintiff, | ) | No. 2:22-CV-03423-DCN |
| | ) | |
| vs. | ) | **ORDER** |
| | ) | |
| CHARLESTON COUNTY SCHOOL | ) | |
| DISTRICT; DANA RODGERS, *in her* | ) | |
| *individual capacity*; and JENNIFER | ) | |
| COKER, *in her individual capacity*, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

This matter is before the court on Magistrate Judge Mary Gordon Baker's Report and Recommendation ("R&R"), ECF No. 37, on plaintiff Shelly G. Hudson's ("Hudson") motion for partial summary judgment, ECF No. 25, and defendants Charleston County School District ("CCSD"), Dana Rodgers ("Rodgers"), and Jennifer Coker's ("Coker") (collectively, "defendants") motion for summary judgment, ECF No. 27.  For the reasons set forth below, the court adopts the R&R, denies Hudson's motion for partial summary judgment, and grants defendants' motion for summary judgment.

## I.  BACKGROUND

The R&R ably recites the facts of the case, and the parties do not object to the R&R's recitation thereof.  Therefore, the court will only briefly summarize material facts as they appear in the R&R for the purpose of aiding an understanding of the court's legal analysis.

This case presents an employment dispute between Hudson, a teacher, and defendants, a school district and its administrators.  See generally ECF No. 1, Compl.

1

Hudson, a Caucasian woman, worked as a math teacher at Daniel Jenkins Academy ("DJA"), an alternative school part of the CCSD for students with behavioral challenges, from August 2018 through May 2019.  ECF Nos. 25-1 at 1; 27-1 at 1.  While Hudson worked at DJA, Rodgers was the principal, and Coker was the Director of Alternative Programs and Rodgers' supervisor.  ECF No. 25-1 at 2.

Hudson claims that she was subjected to a hostile working environment while teaching at DJA.  Compl. ¶¶ 17–20.  She asserts that her students harassed her on a regular basis by calling her a "cr*cker," a "white b****", and a "f***ing white b****."  Id. ¶¶ 41–48.  Hudson contends that she was mocked because of her physical appearance, intimidated, and threatened.  Id. ¶ 85.  She does not allege that she was harassed by any CCSD employees.  See generally Compl.  Rather, Hudson claims that defendants did not adequately respond to student discipline referrals she submitted after these instances of alleged racial and sexual harassment.  Compl. ¶ 31.  More specifically, she claims that she "made at least [sixty-seven] reports of disciplinary incidents involving her students" and that "more than [twenty] of these reports involved claims of conduct that was, on its face, sexually or racially hostile."  ECF No. 25-1 at 2.  According to Hudson, defendants "refused to promptly, effectively, or consistently discipline unruly students."  Id. at 4.  Hudson asserts that "most of [her] disciplinary referrals resulted in only temporary in-school suspension, which many of the students did not fear."  Id. at 3.  She contends that defendants did not follow the CCSD's Progressive Discipline Plan when handling disciplinary referrals and, therefore, "encouraged the abuse and harassment to continue until it became unbearable, and she suffered a 'breakdown'" on May 16, 2019.  Id. at 4–9.  Hudson then requested leave from her employment, which CCSD granted.  ECF No.

27-1 at 6.  Although Hudson had a contract to teach at DJA for the 2019-2020 school year, CCSD offered her a position at a different school, which she declined to pursue.  Id. at 7.

Almost ten months later, on March 10, 2020, Hudson submitted a resignation letter to CCSD explaining that she could "no longer in good faith expect to be able to return to teaching in the foreseeable future" due to her "anxiety, stress, depression, panic attacks, and Post Traumatic Stress Disorder."  ECF No. 25-14.

The South Carolina Human Affairs Commission ("SCHAC") issued Hudson a Notice of Right to Sue letter on September 3, 2020.  R&R at 4.  She then filed this case on October 4, 2022.[1]  ECF No.1, Compl.  In her complaint, she brings the following causes of action: (1) violation of civil rights under 42 U.S.C. § 1981; (2) race and sex discrimination in violation of civil rights under 42 U.S.C. § 1983; (3) violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e; and (4) violation of Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, et seq.  Compl. ¶¶ 68–93.  Hudson seeks compensatory, actual, and punitive damages, as well as attorney fees and costs.  Id.

---

[1] Typically, a person who wishes to file a suit under Title VII must file a charge with either the Equal Employment Opportunity Commission ("EEOC") within 180 days after the alleged unlawful employment practice or with the equivalent state agency within 300 days after the alleged unlawful employment practice.  42 U.S.C. § 2000e-5(e)(1).  Once the agency issues a right to sue letter, the plaintiff has ninety days to file a lawsuit.  Id. § 2000e-5(f)(1).  Here, Hudson claims that she timely filed her charge with the SCHAC, and that the SCHAC issued a right to sue letter on September 3, 2020.  Compl. ¶ 84.  Hudson originally filed her lawsuit on November 24, 2020, eighty-two days later.  Hudson v. Charleston Cnty. Sch. Dist., No. 2:20-cv-04112-DCN-MGB (D.S.C. filed Nov. 24, 2020).  However, her original complaint was dismissed without prejudice by joint stipulation of the parties on April 12, 2022.  ECF No. 20, Hudson, No. 2:20-cv-04112-DCN-MGB.  In their joint stipulation, the parties agreed that the statute of limitations would be tolled so long as the suit was refiled within six months.  Id. at 1.  Hudson refiled her case on October 4, 2022.  See Compl.

Pursuant to 28 U.S.C. § 636 and Local Civ. Rule 73.02(B)(2)(a) (D.S.C.), the action was thereafter referred to Magistrate Judge Baker for pretrial proceedings.  On March 5, 2024, Hudson filed a motion for partial summary judgment, ECF No. 25, and defendants filed a motion for summary judgment, ECF No. 27, requesting that Hudson's case be dismissed in full.  Hudson filed her response to defendants' motion on April 1, 2024.  ECF No. 30.  Defendants filed their response in opposition to Hudson's motion on April 2, 2024.  ECF No. 32.  Defendants replied to Hudson's response on April 22, 2024, and Hudson replied to defendants' response on April 23, 2024.  ECF Nos. 35; 36.

On July 22, 2024, the magistrate judge issued an R&R in which she recommended that Hudson's motion for partial summary judgment be denied and defendants' motion for summary judgment be granted.  See R&R.  Hudson objected to the R&R on August 19, 2024, ECF No. 40; defendants responded on August 22, 2024, ECF No. 41; and Hudson replied on August 23, 2024, ECF No. 42.  As such, this matter is fully briefed and ripe for the court's review.

## II.  STANDARD

### A.  Order on R&R

The recommendation of the magistrate judge carries no presumptive weight, and the responsibility to make a final determination rests with this court.  Mathews v. Weber, 423 U.S. 261, 270–71 (1976).  The court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge . . . or recommit the matter to the magistrate judge with instructions."  28 U.S.C. § 636(b)(1).  The court is charged with conducting a de novo review of any portion of the magistrate judge's R&R to which specific, written objections are made.  Id.  A party's failure to object is accepted

as agreement with the conclusions of the magistrate judge.  See Thomas v. Arn, 474 U.S. 140, 149–50 (1985).

Thus, in the absence of a timely filed, specific objection, the court reviews the R&R only for clear error.  Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005) (citation omitted).  Furthermore, "[a] party's general objections are not sufficient to challenge a magistrate judge's findings."  Greene v. Quest Diagnostics Clinical Lab'ys, Inc., 455 F. Supp. 2d 483, 488 (D.S.C. 2006) (citation omitted).  When a party's objections are directed to strictly legal issues "and no factual issues are challenged, de novo review of the record may be dispensed with."  Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982) (citation omitted).  Analogously, de novo review is unnecessary when a party makes general and conclusory objections without directing the court's attention to a specific error in a magistrate judge's proposed findings.  Id.

## B.  Summary Judgment

Summary judgment shall be granted if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  Id. at 248.  "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the

evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.  "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  Id. at 249.  In so doing, the court must view the evidence in the light most favorable to the non-moving party and draw all inferences in its favor.  Id. at 255.

### III.  DISCUSSION

The magistrate judge recommended denying Hudson's motion for partial summary judgment and granting defendants' motion for summary judgment.

Hudson objects and argues that the court should deny defendants' motion for summary judgment as to her claims under (1) Title VII, and (2) Section 1983, for race and sex discrimination.  ECF No. 40 at 4–5.  Hudson does not object to the R&R's recommendation to dismiss her claims under (1) Section 1981, or (2) Title VI.  See generally ECF No. 40.  Hudson specifically objects that (1) her sworn declaration was not a sham affidavit, and that (2) she did sufficiently establish a genuine issue of material fact in support of the required element of imputing liability for the alleged unlawful harassment to her employer.  Id. at 5.  The court will analyze each of Hudson's objections in turn.

### A.  Whether Hudson's Declaration was a "Sham Affidavit"

Hudson objects to the magistrate judge's finding that Hudson's declaration, ECF No. 30-1, Hudson Decl., was a "sham affidavit" and therefore does not create a genuine dispute of material fact.  See R&R at 17.  The court agrees with the magistrate judge's findings.

Hudson testified in her deposition:

Q. Did you ever file a complaint with the district's employee relations department about alleged sexual or racial harassment?

A. No. I notified the assistant principal, the principal, the district office, everything, through those referrals of what was going on in there, because everybody had access to that.

ECF No. 27-4, Hudson Depo. at 17:19–25.

Hudson stated in her declaration:

[a]t least three times a week, I orally informed my assistant principal at DJA, Bernard Scott, that I was being sexually and racially harassed by students. I would repeatedly ask him to address the issues raised in my referrals and what could be done to stop or reduce my abuse.

Hudson Decl. ¶ 51.

The alleged contradiction between Hudson's deposition and declaration is relevant in determining whether there is a genuine issue of material fact regarding the defendants' knowledge. Specifically, whether Hudson adequately informed defendants she was being harassed.

It is well-established within this circuit that a party may not file a "sham affidavit" in order to create an issue of fact where the party has been examined under oath during the discovery period, as is the case here. See Barwick v. Celotex Corp., 736 F.2d 946, 960 (4th Cir. 1984) (holding the sham affidavit did not create a genuine dispute of material fact). Further, "'a party who has been examined at length on deposition [cannot] raise an issue of fact simply by submitting an affidavit contradicting [her] own prior testimony,' because to allow that 'would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact.'" Hannah v. United

Parcel Serv., Inc., 72 F.4th 630, 638 (4th Cir. 2023) (quoting Barwick, 736 F.2d at 960);

see also Stevenson v. City of Seat Pleasant, 743 F.3d 411, 422 (4th Cir. 2014).

Hudson maintains her declaration is not improper under the "sham affidavit" rule, arguing the mere fact that an affidavit or declaration is self-serving does not make it a "sham affidavit." ECF No. 40 at 7. Hudson further argues there is not a "bona fide inconsistency" between her declaration and her deposition testimony, so the sham affidavit rule does not apply. Id. at 8. She contends any discrepancy about whether she notified defendants only via disciplinary referrals is due to defendants asking a "very specific question" during the deposition (when she answered she had not filed a formal harassment complaint with CCSD's employee relations department and only informed defendants via disciplinary referrals.) Id. at 9. She alleges her declaration is consistent with her testimony, as she testified that in addition to the written referrals, she orally informed the assistant principal about her harassment. Id. at 9–10.

Defendants counter Hudson's argument by arguing that her declaration is a "sham affidavit" that contradicts her sworn deposition testimony. ECF No. 41 at 3. Defendants argue the contradiction is material because it refutes her testimony that she did not inform school officials of the alleged unlawful harassment perpetrated by students at DJA by any means other than through her student disciplinary referrals. Id. They argue the question in her deposition did not restrict her response to only written complaints and that her answer affirms that Hudson notified her assistant principal, and others, of the alleged harassment only through her disciplinary referrals. ECF No. 41 at 4–5.

The magistrate judge agreed with defendants, finding that "the record conclusively establishes that [Hudson] never filed a formal or informal harassment

complaint and never told Rodgers (or any other administrator) that she felt her students were harassing her because of her sex and race." R&R at 19. The magistrate found Hudson's declaration contradicted her deposition testimony. Id. It was only in her declaration she claimed, for the first time, that she orally informed the principal she was being sexually and racially harassed. Id.

The court agrees with the magistrate judge's analysis. There is a clear contradiction between Hudson's deposition testimony, and her subsequent declaration which is material as to whether CCSD was on notice, and whether they knew Hudson considered the student's actions as harassment. The record shows Hudson did not make a concerted effort to inform CCSD that the conduct of the students in her sixty-seven disciplinary referrals went beyond the conduct other teachers reported in the 1,473 disciplinary referrals CCSD received within the school year. ECF No. 40 at 14. The CCSD administration is not expected to comb through each and every one of the 1,473 disciplinary notices, to speculate as to whether a teacher is simply submitting a student for discipline or whether that individual teacher feels as if they are being harassed.

It is only in Hudson's subsequent declaration she brings up, for the first time, any form of communication or notice outside of the student disciplinary referrals, where she alleges, she orally informed the assistant principal she felt she was being harassed. Hudson cannot, after being examined at deposition, "raise an issue of fact simply by submitting an affidavit contradicting [her] own prior testimony." See Hannah,72 F.4th at 638. Here, the court agrees with the magistrate judge that the affidavit is not supported by any other evidence in the record and is contradicted by Hudson's deposition testimony. See R&R at 16. As the only mention of notification outside of the

9

disciplinary referrals came from Hudson's affidavit, that contradicted her previous testimony, the court finds such a "sham affidavit" does not create a genuine dispute of material fact.  See Barwick, 736 F.2d 960.  As such, the court adopts the R&R and grants summary judgment with respect to this claim.

### B.  Whether Hudson Sufficiently Established a Genuine Issue of Material Fact Regarding Imputing Liability to Defendants

Next, Hudson objects to the magistrate judge's recommendations on her causes of action under Title VII and Section 1983.  ECF No. 40 at 4.  The magistrate judge recommended that the court grant defendants' motion and deny Hudson's motion because Hudson failed to present evidence showing defendants had knowledge that she felt she was being harassed by the students, specifically that Hudson did not meet the required element of imputing liability to defendants.  R&R at 14.  Hudson argues the magistrate judge erred because defendants did have knowledge through her submitting discipline notices and orally informing them.  ECF No. 40 at 14.  The court will first look at what elements need to be met to prove her claims, then analyze the level of knowledge defendants had.

#### 1.  Title VII and Section 1983 Claims

To establish a prima facie Title VII or Section 1983[2] hostile work environment claim, Hudson must demonstrate four elements: (1) unwelcome conduct; (2) based on her

---

[2] The court can analyze the merits of Hudson's Section 1983 claim under the standards applicable to Title VII claims.  See Nelson v. Beaufort Cnty. Sheriff's Off., 2021 WL 6880646, at *1 (D.S.C. Nov. 23, 2021), report and recommendation adopted, 2022 WL 407408 (D.S.C. Feb. 10, 2022) ("The Fourth Circuit has held that a claim brought pursuant to § 1983 should be analyzed consistent with those principles that govern consideration of Title VII claims."); Thomas v. Dillon Sch. Dist. Four, 2015 WL 5554508, at *1 (D.S.C. July 24, 2015), report and recommendation adopted, 2015 WL 5554554 (D.S.C. Sept. 21, 2015) ("The standards applicable to lawsuits under Title VII,

race and/or sex; (3) which is sufficiently severe or pervasive to alter the conditions of her employment and create an abusive working environment; and, (4) which is imputable to [d]efendants.  See Boyer-Liberto v. Fontainebleau Corp., 786 F.3d 264, 277 (4th Cir. 2015) (en banc).

Here, there is no dispute that Hudson experienced unwelcome conduct.  See generally ECF Nos. 25-1; 27-1; 30; 32; 35; 36.  The parties neither dispute that Hudson experienced unwelcome harassment nor do they object to the magistrate judge's finding that Hudson has demonstrated the first, second, and third elements of her claim.  See R&R at 8–14; ECF No. 40 at 2, see generally ECF Nos. 25-1; 27-1; 30; 32; 35; 36; 40; 41; 42.  As such, the court reviews the magistrate judge's findings on the first three elements for clear error.  See Diamond, 416 F.3d at 315.  Finding none, the court adopts the magistrate judge's reasoning on the first three elements and proceeds to consider Hudson's objections to the magistrate judge's findings on the fourth and final element, regarding imputation of liability to defendants.

### 2. Defendants Knowledge of Student Conduct Rendering the Conduct Imputable

The magistrate judge recommended granting summary judgment on Hudson's sex and race harassment claims.  R&R at 19.  The magistrate judge found that Hudson failed to produce evidence from which the court could infer a genuine issue of fact regarding whether defendants were put on notice that Hudson felt sexually and/or racially harassed by her students.  Id.  Hudson objects to this conclusion and argues she has presented

---

§ 1981, and equal protection claims under § 1983 are essentially the same, and the same case law is used to evaluate claims under those statutes.").

evidence sufficient to create a genuine issue of material fact as to defendants' knowledge of the harassment.  ECF No. 40 at 13.

This circuit uses a negligence standard when deciding whether an employer can be held liable for third-party harassment under Title VII or Section 1983, and "an employer cannot avoid Title VII liability for [third-party] harassment by adopting a 'see no evil, hear no evil strategy.'"  Freeman v. Dal-Tile Corp., 750 F.3d 413, 422–23 (4th Cir. 2014) (alteration in original) (quoting Ocheltree v. Scollon Prods., Inc., 335 F.3d 325, 334 (4th Cir. 2003) (en banc)).  A plaintiff must establish two prongs for third-party harassment to be imputable to his or her employer: "the employer [1] knew or should have known of the harassment and [2] failed 'to take prompt remedial action reasonably calculated to end the harassment.'"  Id. at 423 (quoting Amirmokri v. Balt. Gas & Elec. Co., 60 F.3d 1126, 1131 (4th Cir. 1995)).  "[A]n employer cannot be expected to correct harassment unless the employee makes a concerted effort to inform the employer that a problem exists under its reasonable procedures.  Thus, employee[s] [ ] bear[ ] significant responsibility in notifying the employer."  E.E.O.C. v. Xerxes Corp., 639 F.3d 658, 674 (4th Cir. 2011) (internal quotation marks, emphasis, and citations omitted).

Hudson argues that there is a genuine issue of material fact as to whether defendants were on notice of the hostile work environment.  ECF No. 40 at 13.  She claims that she made sixty-seven disciplinary referrals, between October 15, 2018 and May 16, 2019, to defendants about students harassing her.  See ECF No. 25-6.  Hudson claims that the content of her disciplinary referrals should have put defendants on notice of her alleged harassment.  ECF No. 25-1 at 12–16.  She references her declaration where she stated that "[a]t least three times a week, I orally informed my assistant principal at

12

DJA, Bernard Scott, that I was being sexually and racially harassed by students. I would repeatedly ask him to address the issues raised in my referrals and what could be done to stop or reduce my abuse." See Hudson Decl. ¶ 51. She also argues defendants were put on notice as to DJA's poor performance as a school overall, evidenced by reports from the Charleston Teacher's Alliance, and Rogers' "needs improvement" performance review. ECF No. 40 at 15. Thus, Hudson argues that defendants had actual knowledge of the alleged abuse. Id. at 16.

Defendants argue that Hudson failed to satisfy her burden of demonstrating that she placed the employer on proper notice of her unlawful harassment allegations under Title VII or Section 1983. ECF No. 41 at 6. In their memo in support of summary judgment, defendants argued that "[Hudson] has admitted that she never contacted CCSD's Employee Relations department to complain about the alleged harassment, and never requested that she be moved to another school during the alleged harassment." ECF No. 27-1 at 16. Defendants further noted that Hudson admitted to "only ma[king] complaints about the actions of the students through her disciplinary referrals," and that she only filed complaints with the South Carolina Human Affairs Commission after she left DJA. Id. at 17.

The magistrate judge emphasized that Hudson never filed a report through the CCSD's specific reporting process, never informed her supervisor that she felt she was being harassed, and never requested a transfer to another school or otherwise indicated that she was incapable of performing her duties because she felt harassed in her work environment. R&R at 19 (citing ECF No. 27-4 at 20). Instead, she left school one day and did not return, only then informing defendants that she felt she was being harassed

and was so emotionally disturbed that she could no longer teach.  Id. (citing ECF No. 25-2 at 2).  As such, the magistrate judge agreed with defendants that liability cannot be imputed in this case, as "the record conclusively establishes that [Hudson] never filed a formal or informal harassment complaint and never told Rodgers (or any other administrator) that she felt her students were harassing her because of her sex and race."  R&R at 15–16 (citing to ECF No. 27-4 at 17).  The magistrate judge explained Hudson's student disciplinary referrals were not sufficient to put the defendants on notice of Hudson's harassment.  R&R at 17–18.  DJA was not a typical workplace, and the DJA students treated many of the teachers with a similar level of disrespect.  Id. As such, an administrator reading Hudson's student discipline referrals would not necessarily know that Hudson was complaining of sexual and racial harassment.  Id.

　　　　The court finds that, through the evidence Hudson points to in her objections, Hudson has undoubtedly shown that defendants were aware of the students' poor behavior directed at teachers.  Id. at 20.  However, as the magistrate judge pointed out, some of the teachers at the school found this conduct to be harassment, and others did not.  R&R at 18.  Thus, even if CCSD leadership or another administrator witnessed the students' conduct, or read about the conduct in Hudson's referrals, nothing would have put them on notice of the fact that Hudson, herself, felt she was being harassed.  Hudson bore a "significant responsibility in notifying [her] employer" if she felt that the conduct amounted to harassment.  Xerxes Corp., 639 F.3d at 674 (quoting Howard v. Winter, 446 F.3d 559, 567 (4th Cir. 2006)).  "[A]n employer cannot be expected to correct harassment unless the employee makes a concerted effort to inform the employer that a problem exists under its reasonable procedures."  Id.

The court finds that Hudson's disciplinary referrals were not enough to put defendants on notice, that the magistrate judge was correct to find that there is no genuine dispute of material fact over whether the students' behavior can be imputed to defendants, and summary judgment is appropriate.[3]  As such, the court adopts the R&R and grants defendants' motion for summary judgment with respect to this claim.[4]

## IV.   CONCLUSION

For the reasons set forth above, the court **ADOPTS** the R&R in full, **DENIES** Hudson's motion for partial summary judgment and **GRANTS** defendants' motion for summary judgment.

**AND IT IS SO ORDERED.**

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**July 14, 2025**
**Charleston, South Carolina**

---

[3] Defendants also wish to preserve their <u>Faragher-Ellerth</u> defense to Hudson's claims for sex or race harassment, which bars claims where the employer demonstrates that (1) it exercised reasonable care to prevent and promptly correct harassment, and (2) that plaintiff unreasonably failed to take advantage of preventive or corrective opportunities.  ECF No. 41 at 9.  Defendants Coker and Rodgers, sued in their individual capacity, also wish to preserve defenses of qualified immunity against Hudson's claim under Section 1983.  ECF No. 41 at 10.

[4] As the court finds that defendants had no actual or constructive knowledge of the harassment, the court declines to reach the question of whether defendants' response was reasonably calculated to end the harassment.